IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| SHAWN ROWE, on behalf of herself and all similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>PREFERRED SENIOR CARE, LLC, a Florida Limited Liability Company, and MARK WHITE, individually,<br><br>Defendants. | CIVIL ACTION NO.<br>2:18-CV-00446-JES-MRM |

## JOINT MOTION FOR APPROVAL OF SETTLEMENT AND DISMISSAL WITH PREJUDICE

Plaintiff Shawn Rowe ("Rowe"), on behalf of herself and opt-in plaintiff Mary Gale Richards ("Richards")[1] (together, "Plaintiffs"), and defendants Preferred Senior Care, LLC d/b/a Senior Helpers of SW Florida ("Preferred Senior Care") and Mark White ("White") (together, "Defendants"; Plaintiffs and Defendants are collectively referred to in this motion as the "Parties"), through their undersigned counsel, move that the Court: 1) approve the terms of the settlement they have agreed upon following arms-length negotiations; 2) dismiss this case with prejudice and direct the entry of final judgment; and (3) grant such further relief as the Court deems just. In support of this motion, the Parties state as follows.

### FACTUAL BACKGROUND

Preferred Senior Care provides in-home care services, specifically personal care and companion care, to consumers in Lee and Collier counties in Florida. Rowe worked as a

---

[1] On or about July 18, 2018, Rowe filed a Consent to Join Lawsuit and be Represented by Morgan and Morgan P.A. on behalf of Richards. ECF No. 9. No other individual has opted into this action.

caregiver for Preferred Senior Care from approximately October 2017 to March 2, 2018. Richards worked as a caregiver for Preferred Senior Care from approximately August 8, 2016 to September 23, 2016 and from approximately May 10, 2017 to December 10, 2017.

In a Collective Action Complaint and Demand for Jury Trial filed on June 26, 2018 ("Complaint"), Rowe alleged that Preferred Senior Care failed to pay her and other similarly situated individuals minimum wage and overtime for hours worked over forty in a workweek. ECF No. 1, ¶¶ 5-8. Rowe sued Defendants seeking to recover minimum wage pay and overtime wages under the Fair Labor Standards Act ("FLSA"). *Id.*, ¶¶ 1, 66-98. Rowe asserted these claims as a putative collective action on behalf of herself and those purportedly similarly situated. *Id.*, ¶¶ 2, 51-65. As noted *supra*, footnote 1, only Ms. Richards joined the action.

Shortly after Rowe filed her Complaint, counsel for the Parties began to explore settlement. The undersigned counsel spoke by telephone and communicated by email numerous times regarding potential settlement August through late October 2018. During this time, Plaintiffs' counsel shared Rowe's and Richards's calculations of their respective claimed damages and provided Defendants' counsel a chart detailing, per pay period, the pay Rowe and Richards had received, the hours they allegedly had worked, and the wages they claimed they were owed. In their first demands, Rowe sought $1,483.07 in wages and an equal amount of liquidated damages. Richards sought $5,312.53 in wages and an equal amount in liquidated damages.[2]

---

[2] Plaintiffs' counsel did not include an amount for claimed attorneys' fees and costs with the first demands. As noted above, the Parties discussed attorneys' fees and costs later in negotiations and separately from their discussions regarding the other amounts to be paid to Plaintiffs.

Defendants vigorously disputed Plaintiffs' claimed damages with regard to both: 1) Plaintiffs' underlying theory of the case (*i.e.*, Plaintiffs sought compensation for all 24 hours of a "24-hour shift," when the law permits an employer to pay an employee less when the parties have agreed to subtract out an appropriate number of hours for sleep time); and 2) the actual hours Plaintiffs claimed to have worked. To support their view on the actual hours worked, Defendants produced Richards's paystubs and timesheets. Defendants did not produce pay and time records relating to Rowe because Rowe had provided her counsel with records at the outset of the representation that were sufficient for her counsel to provide Defendants a demand. In support of their position that Plaintiffs were not entitled to be compensated for all 24 hours of a "24-hour" shift, Defendants produced the relevant employee handbook policies and Plaintiffs' signed acknowledgements, which Defendants alleged demonstrated their receipt of these policies. Plaintiffs hotly contested Defendants' position and alleged that they never received an employee handbook despite the acknowledgments. The Parties independently evaluated these materials in order to assess Plaintiffs' claims and Defendants' defenses.

In communications with Plaintiffs' counsel regarding settlement, Defendants' counsel conveyed that Defendants emphatically denied Plaintiffs' allegations of wrongdoing. Defendants' counsel explained that Preferred Senior Care has robust policies in place regarding timekeeping and compensation for "24-hour" shifts.[3] Defense counsel further explained that Preferred Senior Care paid Plaintiffs a default day rate based on a scheduled sixteen (16) hours of work per 24-hour shift and a sleep period of eight (8) hours—with any

---

[3] In the Complaint, Rowe claimed that she and others were improperly compensated in part due to Preferred Senior Care paying a flat day rate for shifts of 24 hours or more (called "live-in shifts").

work performed in addition to the scheduled sixteen (16) hours to be paid separately if Plaintiffs reported working additional hours. Plaintiffs alleged that they often performed work during "sleep periods" that Defendants knew about or should have known about based on alleged communications between the Parties. Defendants alleged that Plaintiffs never advised Defendants that they had performed work during their scheduled sleep periods and thus Defendants had no reason to think that Plaintiffs performed work during sleep periods. Defendants also maintained that Preferred Senior Care paid Plaintiffs at the appropriate regular and overtime rates. Plaintiffs alleged that the default day rate did not compensate them for all scheduled hours of work, including overtime wages when applicable.

Following these exchanges of documents and information, conversations in which counsel explained their respective Parties' views of the facts, and several rounds of demands and offers, the Parties negotiated a settlement of Plaintiffs' claims against Defendants. On October 30, 2018, through their counsel, the Parties reached agreement upon the settlement amounts Preferred Senior Care would pay, on behalf of both Defendants, to Rowe and Richards, as well as the amount Preferred Care would pay for Plaintiffs' attorneys' fees and costs. The Parties negotiated the amount that Preferred Senior Care will pay Plaintiffs for their attorneys' fees and costs separately from the amounts Preferred Senior Care will pay Plaintiffs.

As reflected in each Settlement Agreement and General Release (singularly, "Agreement"; together, "Agreements"), the settlement amounts to be paid to Plaintiffs include an amount for liquidated damages equal to the amount paid for claimed back wages, as well as separate consideration for the general release and other promises contained in the

Agreements.[4] Rowe's Agreement is attached as Exhibit A; Richards's Agreement is attached as Exhibit B. Specifically, on behalf of Defendants, Preferred Senior Care will pay Rowe $3,500.00, which consists of $850.00 for her claimed wage damages, $850.00 for liquidated damages, $300.00 for the general release and other promises contained in the Agreement, and $1,500.00 for Rowe's attorneys' fees and costs. Preferred Senior Care will pay Richards $10,000.00, which consists of $3,300.00 for her claimed wage damages, $3,300.00 for liquidated damages, $400.00 for the general release and other promises contained in the Agreement, and $3,000.00 for Richards's attorneys' fees and costs.

This matter involves a bona fide dispute regarding whether and to what extent Plaintiffs are entitled to any damages. As demonstrated in this motion, the terms of the Agreements were reached following extensive negotiations by experienced counsel. The Agreements' terms reflect the recognition of the risks and costs of litigation by the Parties with counsel experienced in such matters. In order to avoid these risks and costs, the Parties agree that resolving this litigation in accordance with the Agreements makes sense for all concerned. The Parties therefore urge this Court to approve their settlement.

---

[4] This Court has approved FLSA settlements in which plaintiffs also agreed to general releases in exchange for separate consideration. *See, e.g., Southwick v. Pystmo, LLC*, Case No. 2:16-cv-625-FtM-99CM, 2018 U.S. Dist. LEXIS 44979, *2 (M.D. Fla. Mar. 20, 2018) (Steele, J.); *Herrera v. R & L Carriers, Inc.*, Case No: 2:16-cv-795-FtM-99MRM, 2017 U.S. Dist. LEXIS 143608, *6 (M.D. Fla. Aug. 31, 2017) (McCoy, M.J.), *report and recommendation adopted by*, 2017 U.S. Dist. LEXIS 143605 (M.D. Fla. Sept. 6, 2017); *Scheall v. Nicaea Acad., Inc.*, Case No: 2:14-cv-653-FtM-29MRM, 2016 U.S. Dist. LEXIS 46528, *5 (M.D. Fla. Mar. 25, 2016) (McCoy, M.J.), *report and recommendation adopted by*, 2016 U.S. Dist. LEXIS 46529 (M.D. Fla. Apr. 6, 2016) (Steele, J.); *Mainous v. Barry's Home Furnishings, LLC*, Case No: 2:15-cv-576-FtM-29MRM, 2016 U.S. Dist. LEXIS 47155, *3 (M.D. Fla. Mar. 21, 2016) (McCoy, M.J.), *report and recommendation adopted by*, 2016 U.S. Dist. LEXIS 47160 (M.D. Fla. Apr. 7, 2016); *Caballero v. Lantern Motors, Inc.*, Case No: 2:14-cv-641-FtM-38MRM, 2015 U.S. Dist. LEXIS 168214, *2 (M.D. Fla. Dec. 11, 2015) (McCoy, M.J.), *report and recommendation adopted by*, 2015 U.S. Dist. LEXIS 168199 (M.D. Fla. Dec. 16, 2015); *Sommer v. Augie My Boy, LLC*, Case No: 2:14-cv-77-FtM-29CM, 2015 U.S. Dist. LEXIS 6711, *2 (M.D. Fla. Jan. 21, 2015) (Steele, J.).

**MEMORANDUM OF LAW**

In the Eleventh Circuit, a compromise of an FLSA claim must either be supervised by the Secretary of Labor or approved by the district court. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982). In order to approve the settlement, a court must determine that the compromise is a fair and reasonable resolution of a bona fide dispute under the FLSA. *Id.* at 1354. If the settlement is fair and reasonable, the court should approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.* The terms of the Parties' settlement plainly comply with the spirit of *Lynn's Food Stores, Inc*.

In considering FLSA settlements, courts must determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute." *Southwick v. Pystmo, LLC*, Case No. 2:16-cv-625-FtM-99CM, 2018 U.S. Dist. LEXIS 44979, *2 (M.D. Fla. Mar. 20, 2018) (Steele, J.). To this end, Florida district courts frequently consider the following factors: (i) the existence of fraud or collusion behind the settlement; (ii) the complexity and duration of the litigation; (iii) the stage of the proceedings; (iv) the probability of plaintiffs' success; (v) the range of possible recovery; and (vi) the opinions of counsel. *See, e.g., Seda v. All Fla. Appliance & A/C, Inc.*, No. 8:15-cv-00311, 2015 U.S. Dist. LEXIS 75787, *3 (M.D. Fla. June 4, 2015) (Pizzo, M.J.) (citing cases), *report and recommendation adopted by*, 2015 U.S. Dist. LEXIS 75791 (M.D. Fla. June 11, 2015). This Court has emphasized the importance of an "adversarial context" as a means to render a settlement "more likely to reflect a reasonable compromise of disputed issues." *Herrera v. R & L Carriers, Inc.*, Case No: 2:16-cv-795-

FtM-99MRM, 2017 U.S. Dist. LEXIS 143608, *3 (M.D. Fla. Aug. 31, 2017) (McCoy, M.J.) (internal quotation marks and quotation omitted). Further, this Court has stated:

> [I]f the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching same and justifying the compromise of the plaintiff's claim; and (3) represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.

*Id.* at *6-7 (quoting *Bonetti v. Embarq Management Company*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009)).

Here, Plaintiffs negotiated, through their counsel, settlement terms that are satisfactory to the Parties. The undersigned counsel, who are experienced in wage and hour matters, view the agreed-upon terms as a good outcome for the Parties. It could be years before this matter is ready for a trial, and this Court ultimately could determine that Plaintiffs are not entitled to any recovery. There has been no fraud or collusion in the settlement of this case, and settlement will prevent expensive, protracted, and uncertain litigation. Moreover, the amount for attorneys' fees and costs that Preferred Senior Care will pay to Plaintiffs is reasonable and was agreed upon without regard to the amounts paid to Plaintiffs. Ultimately, after assessing their respective positions and consulting with their counsel, the Parties decided that it is in their respective best interests to resolve this matter early through settlement rather than to proceed through protracted and costly litigation.

Based upon the above, the settlement reached in this matter reflects "a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Herrera*, 2017 U.S. Dist. LEXIS 143608, at *3 (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1354). The Parties respectfully submit that their settlement should be approved.

## CONCLUSION

In light of the contested issues presented in this case and the potentially protracted and expensive litigation that lies ahead, the settlement terms represent a fair and equitable resolution of this matter. The Parties therefore respectfully request that the Court enter an order: (1) approving the terms of their Agreements; (2) dismissing this action with prejudice and directing the entry of final judgment; and (3) granting such further relief as the Court deems just.

DATED this 19th day of December, 2018.

| | |
|---|---|
| MORGAN & MORGAN, P.A.<br>Suite 400<br>600 N Pine Island Rd.<br>Plantation, FL  33324<br>Tel: 954.318.0268<br>Fax: 954.333.3515<br><br>*/s/ Chanelle Ventura*<br>Chanelle Ventura<br>Florida Bar No. 1002876<br>cventura@forthepeople.com<br><br>Attorney for Plaintiffs | LITTLER MENDELSON, P.C.<br>111 North Magnolia Avenue<br>Suite 1250<br>Orlando, Florida 32801<br>Tel: 407.393.2900<br>Fax: 407.393.2929<br><br>*/s/ Theresa M. Waugh*<br>Theresa M. Waugh<br>Florida Bar No.: 89593<br>twaugh@littler.com<br><br>Attorney for Defendants |

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on December 19, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a copy via email to the following: Chanelle J. Ventura, Andrew R. Frisch, Morgan & Morgan, P.A., 600 N. Pine Island Road, Suite 400, Plantation, FL 33324, cventura@forthepeople.com; afrisch@forthepeople.com.

*/s/ Theresa M. Waugh*
Theresa M. Waugh
